1            UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF MARYLAND
2

3  IN RE:                          *  Case No. 04-33853
                                   *
4                                  *
                                   *  Chapter 7
5  YVONNE ELIZABETH THOMPSON-MENDEZ *
                                   *
6                                  *  Baltimore, Maryland
      Debtor                       *  January 28, 2005
7
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
8             TRANSCRIPT OF EMERGENCY HEARING RE:
      ORDER TO SHOW CAUSE AS TO VIOLATION OF STAY (P. 19)
9             BEFORE THE HONORABLE DUNCAN W. KEIR
                UNITED STATES BANKRUPTCY JUDGE
10

   APPEARANCES:
11

   For the Debtor:              YVONNE ELIZABETH THOMPSON-MENDEZ
12                              Pro se
                                3310 Tenth Mill Lane K
13                              Pikesville, Maryland 21208

14  For St. Charles at Olde
   Court Partnership, LLP:      IRVING E. WALKER
15                              Saul Ewing, LLP
                                100 South Charles Street
16                              15th Floor
                                Baltimore, Maryland 21201
17

18  For Bristol Credit, Inc.:   SUSAN D. CAMPBELL
                                1414 Reisterstown Road
                                Baltimore, Maryland 21208
19

   Audio Reporter:             EVELYN MANN, ECRO
20                              United States Bankruptcy Court
                                101 West Lombard Street
21                              Baltimore, Maryland 21201
                                (410) 962-2370
22

   Transcriber:                DANIELLE HAHN
23                              964B Saint Claire Street
                                Hagerstown, Maryland 21742
24                              (301) 733-6866

25  Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.

INDEX

| Witness | Direct | Cross | Redirect | Recross | Further Redirect |
|---------|--------|-------|----------|---------|------------------|

(No witnesses were presented for testimony.)

| Exhibit No. | Description | Marked | Received |
|-------------|-------------|--------|----------|
| 1 | Claim for November and December rent | 8 | 8 |
| 2 | Claim for January rent | 8 | 8 |

1      (Call to Order of the Court)

2           COURT CLERK:  We have the case of Yvonne Elizabeth

3   Thompson-Mendez, Case Number 04-33853.

4           Please identify yourselves for the record.

5           MS. THOMPSON-MENDEZ:  I am Yvonne Thompson-Mendez.

6           THE COURT:  Good morning.

7           MS. THOMPSON-MENDEZ:  Good morning, sir.

8           MS. CAMPBELL:  Good morning, Your Honor.  Susan

9   Campbell on behalf of Bristol Credit.

10          THE COURT:  Good morning.

11          MR. WALKER:  Your Honor, good morning.  Irving Walker

12   on behalf of St. Charles at Olde court Partnership, LLP.

13          THE COURT:  Good morning.  The matter before the Court

14   this morning was triggered by a motion in letter form by the

15   Debtor, Ms. Thompson-Mendez, in proper person, alleging certain

16   facts which at least facially appear to be perhaps violative of

17   the automatic stay in this case.

18          The Court entered an Order to Show Cause and required

19   certain persons and counsel to be present this morning.  I have

20   seen the response filed by Ms. Campbell to the motion as well.

21          Let me ask first what the status of the attempt by the

22   landlord to evict the Debtor is at the moment.  Has a writ of

23   eviction been served?  Has a writ of eviction been issued by the

24   Court?  What is the status of the --

25          MS. CAMPBELL:  I believe it is hold, Your Honor.  Let

1  me -- Your Honor, the petition for warrant of restitution, which

2  is the actual eviction order, has been filed.  No action has

3  been taken.

4          THE COURT:  All right.  So the Debtor, at this point,

5  remains in possession of the apartment, correct?

6          MS. CAMPBELL:  Correct.

7          THE COURT:  Thank you.

8          MR. WALKER:  Let me also add that the status is no

9  rent has been paid.

10          THE COURT:  Now, the response filed calls this court's

11  attention to an old opinion in 8 BR, in the case of In re

12  Knight, written by the late Judge Liebowitz.  And I have read

13  that.  I have a couple of inquiries as to facts that I need to

14  make, and to see whether there's any dispute of fact that's

15  material to the issue before the Court.

16          MS. CAMPBELL:  Your Honor, I also have brought with me

17  today a memorandum and order issued by Judge Derby April 12th of

18  2004, citing In re Knight as controlling, if I may approach?

19          THE COURT:  I'll be glad to read that, although if

20  Judge Derby did not publish it in his opinion, it is clear he

21  did not intend it as precedent, since that's the custom of the

22  Court.

23          MS. CAMPBELL:  I understand that, Your Honor.  I

24  merely bring it to your attention because of the age of In re

25  Knight, to indicate to the Court that it is still the

1  controlling law.

2          THE COURT:  All right.  Well, when did the landlord or

3  landlord's agent first take any action post-petition concerning

4  the rents and/or the property?

5          MS. CAMPBELL:  Your Honor, the action was filed in

6  rent court on December 27th.

7          THE COURT:  Well, now, let's back up.  Before the

8  action was filed, was there any communication or other steps?

9          What I mean "when did the landlord take any action," I

10  don't mean any -- necessarily any legal action.  A letter, a

11  phone call, anything.

12          MS. CAMPBELL:  Your Honor, this landlord is well aware

13  of the procedures when a tenant is in bankruptcy.  They are

14  aware that they may not do anything for 60 days.  That procedure

15  was followed.

16          THE COURT:  So you're telling me that for 60 days

17  after the order for relief, no communication was issued in any

18  fashion to the Debtor concerning the defaulted lease issue?

19          MS. CAMPBELL:  Correct.

20          THE COURT:  Do you agree with this?

21          MS. THOMPSON-MENDEZ:  Sir, I got a letter in the mail,

22  stating that I have to appear in court on the 7th of January,

23  2005, which I did.

24          THE COURT:  Now, when did you get this letter?

25          MS. THOMPSON-MENDEZ:  I got it about two days before

1    the actual date.

2            THE COURT:  So approximately December the 5th then?

3    Is that what you're telling me?

4            MS. THOMPSON-MENDEZ:  Well, tell me I'm wrong then.

5    I'm sorry.

6            THE COURT:  Do you have that letter with you?

7            MS. THOMPSON-MENDEZ:  Yes, sir.  May I approach the

8    bench, sir?

9            THE COURT:  You may.  Hand it to my clerk.  But first

10   show counsel.

11           MS. CAMPBELL:  Your Honor, I'm familiar with -- with

12   the document.

13           THE COURT:  Right.

14           MS. CAMPBELL:  That is the failure to pay rent action.

15   I believe the Debtor misspoke.  It was not January -- or

16   December 5th she received it.  It was probably January 5th

17   because it was not filed as a formal indicate until December

18   27th.

19           THE COURT:  Now, what's the Court been handed is not a

20   letter, but a self-carbon copy of pleadings in the District

21   Court of Maryland for Baltimore County, in a failure to pay rent

22   action, assigning a trial date of January 28th, the affidavit

23   signed January 13th, 2005.

24           So, it would appear -- however, I have two documents

25   now that I look more carefully.

1          The first document appears to have a date stamp of

2     filing in the District Court of December 23, 2004, failure to

3     pay rent and complaint for possession of rented property.

4          And then the second document is a similar form, with

5     different numbers filled in, a different case number.  There's

6     no date stamp that I can find for the file date, but there is an

7     affidavit date of January 13, 2005, as I just spoke, at the

8     bottom.

9          Do you want to tell me what these two are, respective

10    to each other?

11         MS. CAMPBELL:  Your Honor, without actually looking at

12    them, I would suggest that the first one is the claim for

13    November and December's rent.  The second is a second action for

14    January's rent.

15         THE COURT:  Ms. Thompson-Mendez, did you receive any

16    communication from the landlord after your bankruptcy case was

17    filed, prior to your receipt of these documents?

18         MS. THOMPSON-MENDEZ:  No, sir.

19         THE COURT:  Okay.  Now, it appears undisputed, but

20    let's put it on the record.

21         There is an assertion that the Debtor did not pay rent

22    not only before the bankruptcy case was filed, but since the

23    bankruptcy case was filed.  Is that correct?

24         MS. THOMPSON-MENDEZ:  Yes, sir.

25         THE COURT:  All right.  I'm going to return the two

1   documents.

2          What we will do, I think, for the record, Madame

3   Clerk, please mark these as -- the earlier one, which is the one

4   with an affidavit date of 12/20/04, as Court's Exhibit 1, and

5   the second one as Court's Exhibit 2.  They're allowed into

6   evidence, but the originals will be returned to the Debtor, who

7   needs to maintain these in case they're needed for further

8   proposes.  I believe probably the copies are already available

9   to the Respondents.

10          MS. CAMPBELL:  Yes, Your Honor.

11          THE COURT:  Now, Ms. Thompson-Mendez, you're not an

12   attorney, and you are at somewhat of a disadvantage when it

13   comes to an argument concerning the law, but I want to hear from

14   you.

15          You're asserting that the automatic stay was breached.

16   What do you want to tell the Court concerning that assertion?

17          MS. THOMPSON-MENDEZ:  Sir, I went to court on that day

18   to speak with the Judge in Towson, and when I got there on the

19   7th day, I met Mr. Seidel, and that's why I was looking

20   (inaudible) looking for the courtroom, and for some reason he

21   started speaking.  He was very pleasant.  And he asked me what

22   I'm looking for, and I told him.

23          He said to me it would not be posted there.  However,

24   that is the Court's room there and I can wait until it's time.

25   And in talking to him, he said who he was.  And I said, well, I

1   am Yvonne Thompson-Mendez.

2           He said, well, seeing that you are, and I'm here, you

3   are the only case that I have today.  Maybe we can discuss it.

4   He said, if you are here, there is no need for you to see the

5   Judge.  I said, but I wanted to see her.  He said, well, you are

6   here.  There's no need to see her.  I can take it from there.

7   He said, you don't have to wait.  He said because I have to go

8   someplace else.  I can't remember where he said he had to go,

9   but he said he had to go somewhere else, so he would take

10  everything from there.

11          And for some reason, because I really don't know the

12  law of the United States of America, because I'm from the

13  Islands, and I did leave, which I blame myself, to a point,

14  because he told me go ahead and everything will be okay.

15          Then the next thing is like I got the paper in the

16  mail stating about the eviction stuff.  That's what I got.  So

17  that's the reason why I decided to do --

18          THE COURT:  When you talked to Mr. Seidel, are you

19  tell me that what you understood him to tell you is that the

20  ejection action would not go forward?

21          MS. THOMPSON-MENDEZ:  Basically that is what he led me

22  to believe.  He said everything would be okay, and he would take

23  it from there.  He further went on to state that when I get back

24  to the property, I should go and talk with them or call them and

25  let them know what's taken place, and we'll take it from there.

1   That was his words.

2          THE COURT:  All right.  Now, is the content of this

3   conversation disputed?

4          MS. CAMPBELL:  Absolutely, Your Honor.  And Mr. Seidel

5   is here today.

6          I would indicate to the Court that regardless of that

7   conversation, the automatic stay was not violated.  The 60 days

8   had already run.

9          So that the filing of the action in rent court does

10  not constitute a violation of the automatic stay.  Any

11  conversation that may or may not have occurred is irrelevant for

12  the purposes of this proceeding.

13         THE COURT:  I assume that your argument is based on

14  the Knight decision.

15         MS. CAMPBELL:  The Knight decision, Your Honor, and

16  the Bankruptcy Code, which clearly states that a lease of

17  residential real property is being rejected within 60 days.

18         THE COURT:  Does it, in your opinion, state expressly

19  anywhere in the Code that you want to point out for me, that

20  upon such rejection, there is a termination of the automatic

21  stay or some other event that prevents the automatic stay from

22  applying?

23         MS. CAMPBELL:  The automatic stay, Your Honor, applies

24  to property of the estate.  When the lease is rejected, it is no

25  longer property of the estate.

1          THE COURT:  Now, what is your statutory basis for that
2     last sentence, that when the lease is rejected, it is no longer
3     property of the estate?
4          MS. CAMPBELL:  Your Honor, I don't believe that either
5     one of us can find that specific language in the Code.
6          THE COURT:  I would agree.  Mr. Walker, you stood up
7     as if you wanted to see if you could put an oar in the water.
8     I'll certainly let you try.
9          MR. WALKER:  I may as well, Your Honor.  I'm here.
10         Your Honor, I would respectfully submit that if we
11    would take a moment and walk through every subsection of Section
12    362(a), we will find that none of those provisions would apply
13    to a situation of the kind that we are considering today.
14         The actions with respect to the lease, as my
15    co-counsel has indicated, would not be an act against property
16    of the estate.
17         And I think the most important fact, Your Honor --
18         THE COURT:  And you say that, but I'm looking for some
19    statutory provision that tells me that.
20         The argument that I've heard so far from Ms. Campbell,
21    and which is contained in her memorandum, flows directly from
22    the Knight decision.  And it seems to be an argument as follows:
23         Upon rejection, there is an abandonment triggered.
24    And if there is an abandonment, then it's not property of the
25    estate.

1          What I'm asking is, is there any other theory as to no

2    property of the estate, or do you have any other section that

3    you want to call my attention to that creates this lax or this

4    -- this movement out of the estate of any property right?

5          MR. WALKER:  In the interest of completion, Your

6    Honor, let me just walk through the section and point out that

7    by virtue of the Court exhibits, we have established the

8    evidence that the debt that the landlord was seeking to collect

9    was not a pre-bankruptcy debt.

10          The Debtor has been living in this apartment and

11    apparently feels that filing a petition in this court is a

12    ticket to rent-free life after bankruptcy.  And no rent was paid

13    subsequent to filing bankruptcy.  And the complaint limits the

14    relief sought to the post-petition rent.

15          So, clearly, 361(a)(1) is not implicated because an

16    action to collect rent that became due subsequent to the filing

17    of the bankruptcy would not be an action in violation of (a)(1).

18          Secondly, Your Honor, (a)(2) is the enforcement

19    against the Debtor or against property of a judgment.  It

20    certainly does not apply.

21          Third, Your Honor, any act to obtain possession of

22    property of the estate -- this is the one Your Honor is

23    addressing, so let me come back to that for a moment.

24          So we haven't apparently fully addressed Your Honor's

25    question on (a)(3).

1        (a)(4), Your Honor, is an act to create, perfect, or

2   enforce a lien against property of the estate.  We're certainly

3   not endeavoring to do that, Your Honor.

4        Fifth, an act to create, perfect, or enforce against

5   property of the Debtor any lien to the extent that such lien

6   secures a claim that arose before the commencement of the case.

7   And, Your Honor, that is not what the landlord is attempting to

8   do.

9        Sixth, Your Honor, is an act to collect a claim that

10  arose before the case.  Again, that's clearly not what the

11  landlord was seeking to do here.

12       Seventh, set-off, which is not relevant.  And eighth

13  is not relevant, certainly because of the tax board.

14       So, coming back to three, the question the Court is

15  addressing is whether any act against property of the estate was

16  taken.  And certainly at the moment that the bankruptcy case was

17  commenced, the lease was property of the estate.

18       And as my colleague has indicated, our position is

19  consistent with Knight and Judge Liebowitz, that the rejection

20  of the lease does constitute an abandonment of property, and

21  that, therefore, an act against the lease would not be an act

22  against property of the estate.

23       Let me also suggest this, Your Honor.  Look at the

24  actual facts.  The Debtor is living in the apartment.  The

25  Trustee never has, never will, seek to administer the lease as

```
 1  property of the estate.
 2          And certainly there is no indicia that anyone has ever
 3  viewed a rejected residential lease as property of the estate in
 4  terms of the actual handling of a bankruptcy case.  No one has
 5  looked --
 6          THE COURT:  Now, I would have to disagree with that
 7  because there are cases out there that so hold, including --
 8          MR. WALKER:  Your Honor, I could find a case on every
 9  point.  Any side of any issue, I'm sure, Your Honor, I could
10  find a case on.
11          THE COURT:  I thought I just heard you say no one has
12  ever found that.
13          MR. WALKER:  I apologize for my lack of clarity, Your
14  Honor.  I'm speaking about the individual people involved in the
15  actual Chapter 7 cases before this court.  No one ever treats a
16  residential lease as an asset that has to be administered by the
17  Trustee in terms of liquidating it for the benefit of the
18  creditors because everybody knows it has no value.
19          And the Debtor herself has continued to treat it as if
20  -- just like exempt property, just as the clothes she's wearing
21  today, it's not property that's administered in the estate.
22  She's never handed it over to the Trustee.  She didn't give her
23  keys to the Trustee and say, Madame Trustee, this is property of
24  the estate and henceforth I assume you will administer it
25  accordingly.
```

1          Yes, if Your Honor wants to suggest that there is no

2  absolute express language in the Code that says that upon

3  rejection, the lease shall be deemed abandoned.  Yes, we

4  recognize that.

5          But that does not mean, of course, that the Code

6  should be limited in that way because the Code, as Your Honor

7  knows, as well as anybody I know, the Code is not that specific

8  in many areas, and it requires the courts to fill in the gaps

9  between the exact language.

10          And certainly, the conclusion that a residential lease

11 is being rejected is not property within the bankruptcy estate

12 is consistent with every other provision of the Bankruptcy Code.

13          And most importantly, it makes sense without violating

14 the Bankruptcy Code.

15          THE COURT:  Very well.

16          MR. WALKER:  One last point, Your Honor.

17          As a policy, I appreciate that every honest Debtor

18 deserves a fresh start.  And this court bends over backwards to

19 assist Debtors in getting that fresh start.  But this court

20 should not encourage people to dishonor obligations

21 post-bankruptcy and basically view themselves as a ward of the

22 court and essentially view a bankruptcy petition in this court

23 as a ticket to a rent-free life thereafter.

24          THE COURT:  Very well.  Let me tell you the holding of

25 the Court.

1    This court finds that the opinion in In re Knight is

2  in error, and this court will reduce to writing its own opinion.

3    I say that with great reluctance because the Court

4  attempts, wherever possible, to observe as persuasive precedent

5  prior opinions of the Judges of this court, even if they have

6  not been in any way otherwise tested by appellate decisions

7  within the Circuit.

8    The opinion of the late Judge Liebowitz was written

9  shortly after the Code was enacted, and there was much unplowed

10  ground, shall we say, with regard to that.

11    It appears clear, from reading the opinion, that Judge

12  Liebowitz was seeking what Judge Liebowitz thought was the

13  correct and equitable result.  Mr. Walker argues today as to the

14  equities of the case as well.

15    Fortunately or unfortunately, the United States

16  Supreme Court, in a now somewhat famous decision in In re

17  Aylers, Norwest vs. Aylers, states expressly, though, that this

18  court cannot substitute its view of equity for what statutory

19  pronouncements are contained in the Code.

20    And I think that Judge Liebowitz did that

21  inadvertently in the opinion in the Knight case.  In many ways,

22  the outcome in the Knight case is very attractive, as a matter

23  of equity.

24    I agree that bankruptcy is not intended to exchange a

25  requirement on the Debtor to pay rent in order to enjoy premises

1  that are being leased for a way to enjoy the premises without

2  paying.

3          Certainly this court does not need any additional

4  motions flying through the Court than those already being filed

5  at a significantly high volume.

6          But this court can't use those observations as a basis

7  to depart from the Code; convenient, or even attractive as they

8  may be.

9          The flaw in the opinion begins with the unsupported

10  statement that rejection of the lease is also an abandonment.

11          The law is very clear that rejection, which did occur,

12  is a material breach.  Contract law has been clear for many

13  laws, that a breach does not extinguish a contract.  It changes

14  the rights of the parties thereunder.

15          The non-breaching party gains rights generally that

16  are set forth in the contract, and under applicable law.  But it

17  doesn't extinguish the rights, it doesn't go away, and the

18  breaching party may still have rights as well, some given by a

19  contract, and some given by state law.

20          For example, with an individual lease, Maryland law

21  gives a right of redemption.  In a construction contract, in

22  which the contractor is the breaching party, nonetheless, if

23  there are hold-backs or other monies due for work already

24  performed, and these exceed any right of damages resulting from

25  the material breach, the contractor is entitled to be paid those

1    monies.  It doesn't lose those rights.  And that money is the

2    estate's money in that example if the contractor is in a

3    bankruptcy case, unless there's been a formal abandonment.  And

4    I doubt that Mr. Walker or Ms. Campbell would argue otherwise.

5         There is nothing in the Code that I can read that says

6    that's an executory contract and it's treated one way after

7    rejection, but this is an executory contract and it's treated as

8    an abandonment after rejection.

9         There's simply nothing that differentiates between

10   those two as to the effect of rejection.  Rejection is a

11   material breach.  But it is not an abandonment.

12        And Judge Bernstein, in an opinion, the case of In re

13   Henderson, reported at 245 BR 449, in the Southern District of

14   New York in the year 2000, so holds, and I think Judge Bernstein

15   is correct.

16        So I find that the automatic stay did exist at the

17   time that the ejectment action was launched, and that there was

18   a violation.

19        But I also find that no sanction -- other than perhaps

20   being dragged into court today for this hearing -- no sanctions

21   should be levied by this court under Section 362(h).  The

22   landlord obviously acted on advice of counsel, and counsel

23   relied on an opinion that has not been contradicted in this

24   district, and as far as I can tell, in this circuit.  It simply

25   hasn't been spoken to since.

1          And, therefore, there was a substantial basis for what

2    happened, and no intent to violate.

3          Where does that leave everything?

4          It would appear that the post-petition ejectment

5    action under Judge Mannes's opinion, the cite of which I

6    neglected to bring with me out onto the bench, that an act in

7    derogation of the stay is void, that at this moment that is

8    void.

9          Some other courts have held that acts in derogation of

10   the stay are avoidable.  The distinction really is one of burden

11   of coming forward, as Judge Chasnow, in an unreported decision,

12   found.

13         If the act is void, it can be reinstated upon a motion

14   to annul stay if the Court grants that relief.  If the action is

15   only voidable, then it stands still as a valid action until and

16   unless the party against who it was taken comes forward and asks

17   for an order of the Court to void it.  It merely puts the burden

18   on who has to come to court.

19         The status of this bankruptcy case bears on the

20   question of what relief should be granted.

21         This is a case in which the expiration of the deadline

22   for filing complaints to object to discharge runs, I believe,

23   today, and but for one other fact, it's likely a discharge would

24   be forthwith entered, as the rule requires.

25         That other fact is that there is a notice of

1  non-payment of the filing fee installments.

2          As least according to the clerk as of yesterday,

3  Ms. Thompson-Mendez, you haven't paid the filing fee for the

4  case.

5          Under the rule, that prevents a discharge.  And this

6  case will be dismissed without discharge as soon as that time

7  under the notice expires, unless you do pay.

8          Whichever occurs, dismissal or discharge, upon that,

9  the automatic stay is going to terminate either by the dismissal

10  or shortly after the discharge because the case will then be

11  closed.  There's been a no-asset report filed by the Trustee.

12  There will be nothing further for the case to do.

13          When the case closes, just as if the case is

14  dismissed, at that point, the stay in rem is terminated because

15  the closure of the case certainly abandons the interest of the

16  leaseholder.

17          One way or another, what I'm saying is, in the context

18  of where this case is, the automatic stay is probably no less or

19  no -- within about 14 days, one way or the other, there's going

20  to be an ending of the stay.

21          Where will that leave the parties?  Even if

22  post-petition rent had been paid, either accepted with

23  reservations or just accepted, unless there was an expressed

24  waiver of the pre-petition rent, which certainly has not

25  occurred, after the discharge the Debtor would still have a

1  lease with a default.

2         The discharge would bar any in personam action to

3  collect the pre-petition rent from the Debtor personally, such

4  as a wage garnishment or seeking a money judgment.  But it does

5  not change the contract, which, in default, still leaves the

6  landlord with the state law rights and remedies for such

7  default.

8         And so, the landlord, at that point, is again free to

9  seek ejectment for the pre-petition, as well as the

10  post-petition default.

11         Thus, the victory today by the Debtor may be somewhat

12  of an empiric victory.  Given that, the Court, on its own

13  motion, is going to annul the automatic stay because I see no

14  benefit to the Debtor, other than delay which I think is not

15  deserved, to have to have the landlord go back and file, again,

16  to replace the post-petition derogation of stay ejectment

17  actions.

18         But the stay does stay, and I am not lifting it on my

19  motion, the ejectment, until the stay terminates, either upon

20  motion and order, closure of the case, or dismissal.

21         What that means, Ms. Thompson-Mendez, is once that

22  automatic stay goes away because you don't pay the filing fee

23  and this case gets dismissed, you do pay the filing fee and the

24  case gets completed, or the landlord files a motion with this

25  court for an order granting relief from stay.

1        And that order being granted, once the stay goes away,

2   the landlord is going to be able to ask for the writ and do a

3   put-out action.  Do you understand?

4        Chapter 7 does not give you the right to occupy the

5   premises if the lease is not either cured within the case by

6   assumption, or under state law there isn't a redemption as state

7   law may permit.

8        Any questions as to clarify?  No argument?

9        MR. WALKER:  Your Honor, just for future conduct, to

10  make sure our clients conform to Your Honor's direction, based

11  on this ruling, it would -- a landlord who wished not to wait

12  for this time would need to get the Trustee to file a motion for

13  abandonment under 554.

14       THE COURT:  That or file a motion for relief from

15  stay.

16       MR. WALKER:  Right.  Either one.

17       THE COURT:  As you know, Section 362 requires this

18  court to act expeditiously on such motions, and the Court has

19  done a procedure to allow that to happen.  Lawyers get to pick

20  their own dates off the website within the rule.

21       MR. WALKER:  On the other hand, if -- if the landlord

22  felt it was not necessary to have counsel and witnesses come to

23  court, and the Trustee's willing to a notice of abandonment,

24  that would satisfy --

25       THE COURT:  I'm not suggesting what you want to do, or

1  both.  I'm just saying there are avenues available.  But you're

2  correct.  Something has to happen that didn't happen here.

3          MR. WALKER:  Okay.  Thank you, Your Honor.

4          THE COURT:  And the reason I'm going to write an

5  opinion is for the reason that you just asked, that is, having

6  made this ruling, I think the Court should publish it because I

7  think that notice needs to be given to parties such as your

8  client.  And that's where we are.

9          MR. WALKER:  Could you leave my name out of the

10  reported opinion, because I've never lost in a reported opinion?

11          THE COURT:  Well, Mr. Schlossberg asked me to make

12  sure I put it in.

13          THE WITNESS:  All right.  Thank you, Your Honor.

14          THE COURT:  You're welcome.  The Court will draft an

15  order, and subsequently an opinion.  Good day.

16          MS. CAMPBELL:  Thank you, Your Honor.

17       (Proceedings concluded at 10:18 a.m.)

18

19

20

21

22

23

24

25